**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| **DONNA LEACH, et al.,** | : | **CASE NO.:  2:24-mc-22** |
| | : | |
| **Plaintiff,** | : | **JUDGE** |
| | : | |
| **--vs.--** | : | |
| | : | **MOTION OF NON-PARTY RECORD** |
| **TESLA, INC., et al.,** | : | **HERALD TO QUASH SUBPOENA** |
| | : | **DUCES TECUM OR,** |
| **Defendants.** | : | **ALTERNATIVELY, MOTION FOR** |
| | : | **PROTECTIVE ORDER** |

---

Pursuant to Federal Rules of Civil Procedure 45(c)(3), Non-Party AIM Media Midwest, LLC, improperly identified as Record Herald (hereinafter "Record Herald"), appearing by and through the undersigned counsel, respectfully moves this Court for an order quashing the subpoena duces tecum issued to it dated June 5, 2024 (attached as "Exhibit A"), or, alternatively, for a protective order limiting the scope of the subpoena. The subpoena seeks matters which are privileged or otherwise protected by the First Amendment the United States Constitution, the Ohio Constitution at Art. I, Sec. 11, and by Ohio Revised Code § 2739.12. This motion is being filed within 14 days of service of the subpoena and thus is timely filed and is made in accordance with FRCP 45(d)(3). The grounds for this Motion are set forth more fully in the attached Memorandum in Support.

Respectfully submitted,

/s/ Steven A. Keslar
**STEVEN A. KESLAR (0090743)**
**(TRIAL COUNSEL)**
**GALLAGHER SHARP, LLP**
35 North Fourth Street, Suite 200
Columbus, Ohio 43215
Tel.: 614-340-2304
Fax: 614-340-2301

E-mail: skeslar@gallaghersharp.com
*Attorney for AIM Media Midwest, LLC, improperly*
*identified as Record Herald*

**John Bussian (NC Bar No. 15487)**
**Of Counsel**
**The Bussian Law Firm**
150 Fayetteville Street
Suite 1700
Raleigh, NC 27601
jbussian@aol.com
*Attorney for AIM Media Midwest, LLC, improperly*
*identified as Record Herald*

## MEMORANDUM IN SUPPORT

### I.  INTRODUCTION AND STATEMENT OF FACTS

The Record Herald is a newspaper of general circulation covering matters of public interest and importance in the City of Washington Courthouse, Ohio and Fayette County, Ohio.  On or about June 5, 2024, Tesla, Inc. issued a subpoena duces tecum to the Record Herald which is a broad "fishing expedition," seeking information gathered as part of Record Herald's news reporting process. Specifically, the subpoena requests:

> any and all documents, records, and other tangible things that relate to the fatal motor vehicle accident that occurred on April 17, 2021 at the Speedway in the Township of Jasper County on Allen Road involving Clyde T. Leach . . .  including, but not limited to, news articles, news coverage, investigation reports, photographs, videos, audio recordings, investigative notes, inspection notes, interview sheets, witness statements, and any other related documents.

A complete copy of the Subpoena issued by Tesla, Inc. is attached hereto as "Exhibit A" and incorporated herein by reference.

The subpoena relates to a lawsuit pending in the United States District Court for the Northern District of California, Civil Action No. 3:23-cv-3378-SI, styled as *Donna Leach et al. v. Tesla, Inc., et al*. The Record Herald is not a party to that lawsuit. Upon information and belief,

that action concerns allegations of product liability, personal injury and/or wrongful death. It is not a defamation lawsuit. No claim is being made against the Record Herald or its employees. There is no allegation that the Record Herald or its agents has any personal knowledge as to any matter in controversy. Accordingly, there is no justification or compelling interest that warrants setting aside the broad protections afforded to news reporters under the First Amendment to the U.S. Constitution, the Ohio Constitution at Art. 1, Sec. 11, and the Ohio Revised Code § 2739.12.

## II.    LAW AND ARGUMENT

### A.  This motion is timely filed pursuant to FRCP 45(d)(3).

On timely motion, Federal Rule of Civil Procedure 45(d)(3) requires the quashing or modification of a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. As set forth below, the information sought by the subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies. The subpoena also imposes an unreasonable and undue burden on the Record Herald by in essence requiring the Record Herald to broadly scour all of its records for any reference to or relation with a certain vehicle or auto accident. The subpoena should be quashed in its entirety or, alternatively, a protective order should be issued limiting the scope and subject matter to be produced.

This motion is timely filed. The subpoena was issued by counsel for Tesla, Inc., on or about June 5, 2024. FRCP 45(B) requires that the party upon whom a subpoena is served must object to it within 14 days after the subpoena is served.[1] This instant motion is within the prescribed 14-day period and thus this motion is timely filed.

_____

[1] On June 12, 2024, counsel for the Record Herald contacted the counsel for Tesla, Inc. who issued the subpoena to set forth its objections and opposition to the subpoena. Counsel for Tesla, Inc. did not respond.

**B. The Federal Reporter's Privilege bars the instant subpoena from compelling the disclosure of documents and information collected and/or created as part of the news-gathering and editorial process.**

The subpoena at issue seeks privileged information that is protected by the First Amendment to the U.S. Constitution and Article I, Section 11 of the Ohio Constitution. In *Branzburg v. Hayes*, 408 U.S. 665 (1972), the Supreme Court recognized that "news gathering" qualified for First Amendment protection stating:

> We do not question the significance of free speech, press or assembly to the country's welfare. Nor is it suggested that newsgathering does not qualify for First Amendment protection; without some protection for seeking out the news, freedom of the press would be eviscerated.

*Branzburg*, 408 U.S. at 681. Documents collected as part of the newsgathering process, conversations had with actual or potential sources (whether identified or confidential), and handwritten notes of the reporting and editorial staff are all squarely within the protections afforded by the reporter's privilege.

Ohio has long recognized the reporter's privilege under the First Amendment of the U.S. Constitution and/or Article I, Section 11 of the Ohio Constitution. "Analysis in this area must begin with the principle that freedom of the press occupies a preferred position among the rights conferred by both state and federal constitutions. . . Thus, any infringements on this freedom are strictly limited and closely scrutinized." *Fawley v. Quirk*, 11 Media L. Rep. 2336, 9th Dist. Summit No. 11822, 1985 WL 11006 (citing *Branzburg v. Hayes* (1972), 408 U.S. 665).

Regarding subpoenas issued to those engaged in the newsgathering process, the reporter's privilege afforded by the First Amendment is wide-ranging and important:

> The United States Supreme Court has recognized that compulsory process has a chilling effect on First Amendment freedoms.
>
> "***It is particularly important that the exercise of the power of

4

> compulsory process be carefully circumscribed when the investigative process tends to impinge upon such highly sensitive areas as freedom of political association, and freedom of communication of ideas, * * *."

*Sweezy v. New Hampshire* (1957), 354 U.S. 234,245.

The court in *Florida* v. *Silbur* (1979), 5 Med. L. Rptr. 1188, 1189, reasoned:

"***

"To protect against the chilling effect of compulsory process, the press has been afforded a broad privilege under the First Amendment against compelled testimony and production of documents. *Branzburg v. Hayes*, 408 U.S. 665, 707 [1 Med. L. Rptr. 2617] (1972); *Morgan v. State,* 337 So. 2d 951, 955-956 [1 Med. L. Rptr. 2589] (Fla. 1976). This privilege is necessary to ensure the free flow of information to the public by protecting the newsgathering process as well as the exercise of editorial judgment. *See: Miami Herald Publishing Company v. Tomillo,* 418 U.S. 241 [1 Med. L. Rptr.1898] (1974).

"Therefore, when a reporter under subpoena, asserts his or her First Amendment privilege, the burden shifts to the party seeking compelled testimony to demonstrate and prove that there is a compelling interest in requiring such testimony, which interest is sufficient to override First Amendment considerations. * * *."

"***

"The First and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the North Carolina Constitution, afford reporters a qualified privilege to refuse to give testimony or to produce documents in criminal and civil actions. ***The reporter's qualified privilege applies to all information acquired by a reporter in gathering the news, regardless of whether the information is confidential, because the purpose of the privilege is to assure, to the fullest extent possible, the free flow of information to the public.''

"***." (Citing *North Carolina v. Hagaman* (1983), 9 Med. L. Rptr. 2525, 2526-2527, with approval).

*Fawley v. Quirk*, 9th Dist. Summit No. 11822, 1985 WL 11006, at 2-3 (emphasis added). "In order to overcome the reporter's privilege, the [issuing party] must demonstrate (1) that the information sought is material, relevant, and necessary; (2) a strong showing that the information cannot be

5

obtained by alternative means; and (3) that the information is crucial to the [issuing party's] case."
*Riley v. City of Chester*, 612 F.2d 708, 716-717 (3d Cir. 1979).

The reporter's privilege being asserted by the Record Herald is essential to the core values that the First Amendment protects. Newsworthy events are often events that also result in lawsuits. It is axiomatic that requiring newspaper reporters and editors to testify about their reporting, especially as to their sources, would have a chilling effect on free press rights. Left alone, newspaper reporters' and editors' testimony would be sought before litigants explored first-hand sources. Indeed, lazy litigants may find it simpler and cheaper to compel journalists to reveal their sources or to hand over information rather than investigating on their own to find appropriate witnesses. This would, of course, be at the expense of newspaper staff time and resources that should be used for reporting and editing. *See O'Neill* v. *Oakgrove Constr.,* 71 N.Y.2d 521, 524, 523 N.E.2d 277 ("[t]he autonomy of the press would be jeopardized if resort to its resource materials, by litigants seeking to utilize the newsgathering efforts of journalists for their private purposes, were routinely permitted ... because journalists typically gather information about accidents, crimes, and other matters of special interest that often give rise to litigation, attempts to obtain evidence by subjecting the press to discovery as a nonparty would be widespread if not restricted on a routine basis"). The reporter's privilege covering all manner of news gathering and the editorial process is essential to the preservation of free press rights. In a case like this, where the newspaper has reported and published articles and pieces about a lawsuit involving a major corporation in the regional area covered by the newspaper's reporting, there is a compelling interest in enforcing the reporter's privilege. Indeed, if every communication, document, or note collected or created as part of that reporting process were subject to production in every lawsuit, it would in effect completely inhibit the newspapers from such reporting. A newspaper would never report on a pending lawsuit if such reporting opened the door for the litigants to engage in a fishing expedition of the newspapers' files, records, and notes. The chilling effect would be enormous and

would be completely counter-productive to the protections carved out in the First Amendment to the U.S. Constitution and in Art. I, Section 11 of the Ohio Constitution.

    **C.  The Ohio Shield Law bars the instant subpoena from compelling the disclosure of documents and information collected and/or created as part of the news-gathering and editorial process.**

Ohio Revised Code 2739.12, known as the Ohio Shield law, protects against compelled disclosure of "the source of any information procured or obtained . . . in the course of [a print journalist's] employment." The Ohio Shield law "grants reporters and editors an absolute and unqualified privilege." *Ventura v. The Cincinnati Enquirer*, 396 F.3d 784, 792 (citing *In re April 7, 1999, Grand Jury Proceedings*, 140 Ohio App.3d 755, 749 N.E.2d 325). The U.S. Sixth Circuit in Ventura held that the Ohio Shield law protects not only the "source of any information" but also the disclosure of any information that inevitably would have revealed information about the existence, or absence, of other unidentified sources. *See Ventura*, 396 F.3d at 793 ("If the court had forced the journalist deponents to confirm or deny plaintiff's claim, they would inevitably have revealed information about the existence, or absence, of other unidentified confidential sources"). Therefore, the Ohio Shield law protects newspapers and reporters against exactly the type of subpoenas at issue here—fishing expeditions seeking any potential communications, to and from, potential sources. By requiring the Record Herald to respond to this subpoena, it in essence compels the disclosure of the existence, or absence, of sources unidentified in the news pieces. Although certain names and email addresses have been identified in the article published by the Record Herald, responding to this subpoena would requiring a response by the Record Herald would compel either the existence or absence of additional persons and/or entities as sources. For this reason, the requests in this subpoena are barred by the express language of the Ohio Shield law.

    **D.  The Parties Issuing the Subpoenas Cannot Sustain Their Burden to Overcome the Reporter's Privilege.**

The issuing parties bear the burden of showing (1) that the information that is being withheld on a claim of privilege is material, relevant, and necessary; (2) a strong showing that the information cannot be obtained by alternative means; and (3) that the information is crucial to the issuing party's case. The Parties to this case cannot sustain this burden because there is no information sought that is personal knowledge of the Record Herald. There is no suggestion or allegation that a reporter for the Record Herald was an eyewitness to a critical event in the above-referenced cases. Rather, it is the Record Herald's belief that it is merely caught in the "cross-fire" of litigious parties about an ancillary issue—i.e, not actual claims and defenses being asserted in the lawsuit. Simply put, the information sought from the Record Herald is not material, relevant, or necessary to proving the parties' cases.

There is no evidence that the sought-after information cannot be obtained by alternative means. Indeed, the requested communications involved persons and/or attorneys involved in this case; the requested information can be obtained from them without invading the reporter's privilege of the Record Herald. Furthermore, the publicly available reporting done by the Record Herald identified some sources of information. Information can be obtained from those identified sources without invading the reporter's privilege of the Record Herald. The parties cannot make a strong showing that the information cannot be obtained from alternative means.

The parties also cannot prove that the sought-after information is crucial to their case. The parties should be required to produce evidence that absent setting aside the reporter's privilege, they would be substantially and materially prejudiced in their ability to move forward with their case in the instant lawsuit. Until such a showing is made, the parties have not sustained their burden.

8

The parties cannot meet any of the elements necessary to overcome the reporter's privilege, much less all three elements. It is worth noting that in civil cases, like is at issue here, the reporter's privilege is afforded even greater protection. *See e.g., Slagle v. Coca-Cola, Inc.*, 30 Ohio Misc.2d 34, 35, 507, N.E.2d 794, 795 (C.P. 1986) (citing *Baker v. F&F Invest.*, 470 F.2d 778, 785 (C.A.2, 1972) ("A news gatherer's privilege is given greater weight in a civil action"). The privilege should not be set aside lightly. Because the parties cannot overcome the reporter's privilege, the Court should grant the Motion to Quash or, alternatively, limit the parties' requests to be as least burdensome on the reporter's privilege as reasonably possible.

## III.   THE SUBPOENA AT ISSUE FAILS TO COMPLY WITH FRCP 45 AND MUST BE QUASHED OR MODIFIED.

The Subpoena requires the production of documents at Nelson Mullins Riley & Scarborough, LLP located in Torrance, CA 90502. This is more than 100 miles from the principal place of business of the Record Herald in Washington Courthouse, Ohio. Thus, the subpoena does not comply with FRCP 45(c)(1)(A) or 45(c)(2)(A).

Quashing or modifying the subpoena is required because the subpoena requires a person to comply beyond the geographical limits specified in Rule 45(c). See FRCP 45(d)(3)(A)(ii). It requires the disclosure of privileged or other protected matter and no exception or waiver applies. See FRCP 45(d)(3)(A)(iii).

## IV.   THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION AT COLUMBUS, IS THE COURT FOR THE DISTRICT WHERE COMPLIANCE WOULD BE REQUIRED.

Although the lawsuit from which this subpoena originates is pending in the U.S. District Court for the Northern District of California, it is directed to the Record Herald which has its principal place of business in Washington Courthouse, Fayette County, Ohio.  Fayette County sits within the territorial jurisdiction of the Southern District of Ohio, Eastern Division at Columbus.

Accordingly, this Court is the "court for the district where compliance is required" as specified in FRCP 45(d)(3).

## V.      CONCLUSION

The party who issued the subpoena bears the burden of proving the privilege afforded to newspapers and news reporters by the First Amendment to the U.S. Constitution, Art. I, Sec. 11 of the Ohio Constitution, and Revised Code § 2739.12. The parties cannot sustain that burden. Accordingly, pursuant to FRCP 45(d)(3), the subpoena must be quashed in its entirety. Alternatively, Record Herald respectfully requests a protective order, limiting the scope of the subpoena in accordance with the reporter's privilege.

Respectfully submitted,

*/s/ Steven A. Keslar*
**STEVEN A. KESLAR (0090743) (Trial Attorney)**
**GALLAGHER SHARP, LLP**
35 North Fourth Street, Suite 200
Columbus, Ohio 43215
Tel.:  614-340-2304
Fax:  614-340-2301
E-mail: skeslar@gallaghersharp.com
*Attorney for AIM Media Midwest, LLC, improperly*
*identified as Record Herald*

**John Bussian (NC Bar No. 15487)**
**Of Counsel**
**The Bussian Law Firm**
150 Fayetteville Street
Suite 1700
Raleigh, NC 27601
jbussian@aol.com
*Attorney for AIM Media Midwest, LLC, improperly*
*identified as Record Herald*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above and foregoing was served this 18th day of June, 2024 by electronic mail and/or ordinary U.S. Mail, postage prepaid, upon the following:

Todd A. Walburg (SBN 213063)
Scott B. Baez (SBN 330485)
BAILEY & GLASSER, LLP
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel: 510-272-8000
Fax: 510-463-0291
Email: twalburg@baileyglasser.com
baez@baileyglasser.com
*Attorneys for Plaintiff Donna Leach,*
*Individually and on behalf of the*
*Estate of Clyde Leach*

Sandra G. Ezell (SBN 325046)
Eden M. Darrell (SBN 295659)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
901 East Byrd Street, Suite 1650
Richmond, VA 23219
Telephone: 804-533-2900
Facsimile: 804-616-4129
sandra.ezell@nelsonmullins.com
eden.darrell@nelsonmullins.com

Ian G. Schuler (SBN 275052)
750 B. Street, Suite 2200
San Diego, CA 92101
Telephone: 619-489-6110
Facsimile: 619-821-2834
ian.schuler@nelsonmullins.com

Trevor C. Zeiler (SBN 325543)
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone: 424-221-7400
Facsimile: 424-221-7499
trevor.zeiler@nelsonmullins.com
*Attorneys for Defendant, TESLA, INC.*

*/s/ Steven A. Keslar*
STEVEN A. KESLAR (0090743)
Gallagher Sharp LLP
*Attorney for AIM Media Midwest, LLC, improperly*
*identified as Record Herald*

11